Steven Sugarman
New Mexico Bar No. 5717
appearing *pro hac vice*
347 County Road 55A
Cerrillos, New Mexico 87010
(505) 672-5082
stevensugarman@hotmail.com

Attorney for WildEarth Guardians

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TUCSON DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS,<br><br>　　Plaintiff,<br><br>vs.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE and UNITED STATES FOREST SERVICE,<br><br>　　Defendants. | No. 13-151-RCC<br><br>**PLAINTIFF'S NOTICE RE: FEDERAL DEFENDANTS' MOTION TO DISSOLVE INJUNCTION**<br>**[ECF DOC NO. 112]** |

1   On the afternoon of the day before this Court's hearing on the Federal Defendants'
2   Rule 59 motion, Federal Defendants floated a "trial balloon" when they filed a motion
3   styled as Defendants' Motion to Dissolve the Court's Injunction Re the Cibola National
4   Forest.  ECF Doc. No. 112.  Plaintiff WildEarth Guardians ("Guardians") respectfully
5   informs the Court that it intends to file a timely response to the Motion to Dissolve.
6   However, because the motion is clearly intended to test the boundaries of this Court's
7   September 12, 2019 Order, Guardians herewith submits a few brief comments on the
8   motion to dissolve in advance of the hearing on the pending Rule 59 motion.  Guardians'
9   intent in submitting these comments is to alert the Court to the specific manner in which
10  the Federal Defendants intend to proceed in response to the the on-going injunction
11  prohibiting certain forest treatments on the Cibola National Forest, and to thereby achieve
12  judicial economy and efficiencies.
13  The motion to dissolve is premised on the notion that the U.S. Fish and Wildlife
14  Service ("FWS") issued a superceding Biological Opinion ("BiOp") for the Cibola
15  National Forest on November 5, 2019, ECF Doc. No. 112-1, and that this superceding
16  BiOp "fully complie[s] with this Court's order [of September 12, 2019]."  ECF Doc. No.
17  112 at 1.  The superceding BiOp is clearly aimed at testing the limits of this Court's
18  September 12, 2019 order, and at ascertaining just how little the Federal Defendants need
19  to do in order to wriggle out from underneath the injunction.  As this Court is aware, the
20  Federal Defendants have hung their hat on the argument that this Court erred – and
21  caused "manifest injustice" – when it included the phrase "route to recovery" in its
22  September 12, 2019 decision.  Yet the superceding BiOp states as follows:

23  > By sustaining nesting/roosting habitat, the Cibola NF is meeting owl
24  > survival requirements. In addition, the Forest Service is conducting surveys
    > in suitable habitat to locate owl sites on the Cibola NF, and
    > identifyingsuitable, but currently unoccupied, recovery habitat to manage
25  > for future nest/roost habitat. By conducting these actions, the Cibola NF is
    > maintaining the habitat conditions necessary to provide roosting and nesting
26  > habitat for the Mexican spotted owl within the action area and **providing a
    > route to recovery** by supporting the Mexican spotted owl throughout its
27  > range into the foreseeable future.

28  ECF Doc. No. 112-1 at 22 (emphasis added).

As stated above, Guardians will file a full responsive memorandum within the time allotted by rule, but in the interim Guardians respectfully directs the Court's attention to the following salient features of the superceding BiOp.

First, the superceding BiOp – just like the 2012 BiOp that this Court found to be arbitrary and capricious – continues to relieve the U.S. Forest Service ("USFS") of any enforceable responsibility for long-term range-wide population monitoring. The superceding BiOp states that the USFS has funded population monitoring in the past and "intends to fund" population monitoring in the future. However, this Court has already held that "future measures" must be incorporated as requirements in a BiOp if they are to serve as the basis for a no jeopardy conclusion. *WEG 2019* at 12 *citing Center for Biological Diversity v. Rumsfeld*, 198 F.Supp.2d 1139, 1154 (D. Ariz. 2002). The BiOp's statement regarding the USFS's future intent does not meet the mark. *National Wildlife Federation v. National Marine Fisheries Service*, 524 F.2d 917, 935-36 (9th Cir. 2008) (holding that "we are not persuaded that that even a sincere general commitment to future improvements may be included in the proposed action [in order to support a no jeopardy conclusion] absent specific and binding plans").[1]

Second, the Federal Defendants persist in their position that they can evade the requirement for long-term range-wide population monitoring by monitoring habitat. In this regard, the superceding BiOp states as follows:

> Regardless of long-term trends in owl population, it remains clear, based on the 2012 Recovery Plan, that safeguarding and promoting habitat features needed to support the owl through uneven-aged stand management is a priority for the conservation of the species.

ECF Doc. No. 112-1 at 22. In its September 12, 2019 decision, this Court addressed the

---

[1] The superceding BiOp does not contain an Incidental Take Statement, so the long-term range-wide population monitoring requirement could not be included in the BiOp as an associated "reasonable and prudent measure." However, a population monitoring requirement could be included as part of the "action" subject to the Section 7 consultation, and in that event the USFS's failure to implement that population monitoring would trigger a requirement for the USFS to re-initiate consultation with the FWS as to the impacts of the action. *See* 40 C.F.R. § 402.16(c).

"habitat-instead-of-population-monitoring" approach that is now reified in the superceding BiOp, and found that this approach does not pass muster in light of the Recovery Plan's essential reliance on long-term range-wide population monitoring to validate and test assumptions as to the appropriate types and degrees of forest treatments on national forest lands. *WEG 2019* at *11.

Third, the superceding BiOp entirely unravels the fundamental logic underlying the adaptive management program for the MSO, and renounces the core importance of using long-term range-wide population trend data to validate assumptions as to the impacts of forest treatments. In this connection, the superceding BiOp states:

> [E]ven if long-term population trends revealed declining trends (which would preclude delisting), we would not construe such results as grounds for foregoing habitat management actions as proposed by the Cibola NF (*e.g.*, mechanical and managed fire treatments, which mitigate risk of high-severity wildfire) needed to safeguard key habitat elements for the owl.

ECF Doc. No. 112-1 at 22-23. Guardians has previously explained to the Court that the testing and "fine-tuning" of management actions through population trend monitoring is the *sine qua non* of adaptive management. As stated by the leading USFS MSO biologist and Recovery Team leader:

> Monitoring is critically important to the adaptive management process. The Forest Service has long espoused adaptive management as a cornerstone of its management efforts. **As management actions are applied, information that details the efficacy of those actions is critical to future efforts. If the actions meet stated objectives, they should continue. If not, perhaps they should be revised and different approaches are warranted.**
>
> The recovery plan was a combination of prescriptive site-specific guidance and descriptive desired conditions to strive for on the landscape. **The underlying philosophy of the recovery team was that the plan should emphasize adaptive management, whereby recommendations would be adjusted as information was acquired to evaluate their effectiveness.**
>
> **Depending on the outcome of [monitoring], treatments could continue, discontinue, or be adjusted.**

AR-FS 9370-72 (emphasis added). The Federal Defendants' repudiation of this basic concept of adaptive management – and the specific purpose of long-term range-wide population monitoring in the case of the MSO – is nothing short of astonishing.

1  In its preliminary review and analysis of the superceding BiOp, Guardians has
2  detected other infirmities and inconsistencies with the adaptive management approach set
3  out in the Recovery Plan that would preclude a rational no jeopardy conclusion in an
4  MSO BiOp.  Guardians will fully brief all of these issues in its response to the motion to
5  dissolve.  However, for purposes of the November 7, 2019 hearing on the Federal
6  Defendants' Rule 59 motion, Guardians believed it was prudent to advise this Court that
7  the Federal Defendants are probing this Court with the motion to dissolve in an effort to
8  ascertain just how little accountability they can get away with in order to convince the
9  Court that they are no longer "shirking [their] responsibility" to the MSO.  *WEG 2019* at
10  *11.

12  Dated:  November 6, 2019.

14  Respectfully submitted,

15  */s/   Steven Sugarman*
   Steven Sugarman
16  347 County Road 55A
   Cerrillos, New Mexico 87010
17  (505) 672-5082
   stevensugarman@hotmail.com

20  **CERTIFICATE OF SERVICE**

22  I hereby certify that a true and correct copy of this Plaintiff's Notice Re: Response to Defendants' Motion to Dissolve the Court's Injunction Re the Cibola National Forest was served on counsel of record on November 6, 2019 through the Court's electronic CM-ECF system.

24  */s/ Steven Sugarman*
25  Steven Sugarman